IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

JERRY BOYLE, on behalf of himself and a
class of others similarly situated,

                Plaintiff,

         v.

CITY OF CHICAGO, et al.,

                Defendants.

Case No. 17-cv-00244

Hon. Harry D. Leinenweber

## MEMORANDUM OF LAW IN SUPPORT OF CITY OF CHICAGO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant City of Chicago (the "City"), by its counsel, Edward N. Siskel, Corporation Counsel for the City of Chicago, hereby respectfully submits this memorandum of law in support of its motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint. In support of its motion, the City states as follows:

### INTRODUCTION

Plaintiff has sued the City of Chicago and numerous current and former members of the Chicago Police Department ("CPD"),[1] on behalf of himself and a purported class, claiming that CPD uses a device – a "cell site simulator" – in violation of the First and Fourth Amendments of the United States Constitution, as well as corollary provisions in the Illinois Constitution, and also raising a variety of state tort claims. Plaintiff's Complaint fails at the outset under Rule 12(b)(1) for lack of standing because, on the day that Plaintiff's alleged injury occurred, CPD was not in possession of the cell site simulator and therefore could not – and did not – use it to

---

[1] Defendants Garry McCarthy, John Escalante, Eddie Johnson, Nicholas Roti, Anthony Riccio, Jack Costa, and James Washburn are filing a separate motion to dismiss addressing claims directed at them.

gather any of Plaintiff's cell phone information. But even if Plaintiff could overcome this fatal pleading defect, the Complaint should be dismissed in its entirety for a failure to state a claim under Rule 12(b)(6), as set forth fully below.

**BACKGROUND**

Plaintiff's allegations center on technology known as "cell site simulators," which Plaintiff claims have "extraordinary capabilities" and "can" access the content of calls, call log information, text messages, internet browsing history, and location information for cell phones. *See* Compl. ¶¶ 27-33. The Complaint is a veritable screed; it contains a historical synopsis of CPD's purchase of its cell site simulator, including details about disputes that arose in state court Freedom of Information Act ("FOIA") litigation. Plaintiff also spends several pages detailing the City's alleged past surveillance of political groups, dating back to the 1920s, which Plaintiff characterizes as "First Amendment investigation[s]." Compl. ¶ 98. Yet Plaintiff makes no allegation that he was the subject of any such First Amendment investigation. And, in any event, surveillance practices that allegedly were utilized generations ago have no bearing on whether CPD's use of modern technology is improper today. In short, Plaintiff's factual allegations regarding CPD's purchase of cell site simulators, FOIA litigation that is no longer pending, and supposed CPD surveillance of First Amendment activities are wholly irrelevant to the legal claims set forth in Plaintiff's complaint.

The only pertinent facts pleaded are the following: Plaintiff Boyle attended a "political protest" on January 15, 2015, and, at around 8:00 p.m. that day, his "private cell phone was searched by a CPD cell site simulator" near the 2200 block of West Ogden Avenue, without "a warrant or probable cause." Compl. ¶¶ 6, 11, 56, 60, 62. Plaintiff also alleges that this supposed use of "cell site simulators on Plaintiff Boyle in January 2015" was "pursuant to CPD's standard

2

practice of spying on political protestors." *Id.* ¶ 103. But there is nothing in the Complaint that explains why Plaintiff believes his phone was searched by a cell site simulator on that date or what type of information was collected. Further, Plaintiff does not specify whether he believes he was a target of a CPD investigation or merely happened to be present in the area of a targeted search. These pleading deficiencies are fatal to Plaintiff's claims.

## 12(b)(1) LEGAL STANDARD

Because standing is an essential jurisdictional component of Article III's case-or-controversy requirement, it is "'not a mere pleading requirement but rather an indispensable part of the plaintiff's case[.]'" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Article III standing requires (1) an injury-in-fact to a legally protected interest, (2) a causal nexus whereby the injury is fairly traceable to defendant's actions, and (3) redressability of the injury by court action. *Lujan*, 504 U.S. at 560-61. The Plaintiff bears the burden of establishing these elements. *Id.* at 561. In addition to "facial challenges" to standing based on the four corners of the complaint, a defendant may raise a "factual challenge" to standing by submitting evidence demonstrating that although the allegations of the complaint are "facially sufficient," subject matter jurisdiction is lacking because the plaintiff did not, in fact, suffer a legally cognizable injury.[2] In such cases, "'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Apex Digital*, 572 F.3d at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008)).

---

[2] Similarly, a plaintiff may factually challenge diversity jurisdiction under Rule 12(b)(1) by submitting proof that the party purportedly creating diversity does not reside where alleged to reside. *See Ner Tamid Congregation of Northtown v. Krivoruchko*, 620 F. Supp. 2d 924, 930-31 (N.D. Ill. 2009).

3

## 12(b)(6) LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The defendant must be given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are presumed true for purposes of a motion to dismiss, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

**I.  There is No Case or Controversy and Thus No Article III Jurisdiction Because Plaintiff Has Not Suffered an Injury-In-Fact.**

Plaintiff attempts to mount a broad policy-based attack on the entire "cell site simulator" ("CSS") industry, essentially contending that such technology is inherently pernicious. Of course, to bring an action in federal court, a plaintiff needs more than a generalized policy objection, however heartfelt; he needs, *inter alia*, an injury that is both concrete and particularized. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Plaintiff funnels his broad philosophic challenge to CSS technology through the putative scenario that on January 15,

2015, CPD deployed CSS equipment at a protest event that Plaintiff attended, allegedly sweeping up some undefined category of electronic information from his phone (and the phones of others), resulting in violations of various federal and state laws.

However, Plaintiff cannot possibly have suffered the injury he claims because CPD did not have possession of, or access to, a CSS on January 15, 2015; the essential components of its only CSS system were in the custody of its manufacturer, the Harris Corporation, in Florida, for maintenance and upgrade between late December 2014 and April 2015. *See* Declarations of Sgt. James Fiduccia (Ex. A), Police Technicians Alex Aleszczyk (Ex. B), Dragan Nikin (Ex. C), and Ronald Bonadurer (Ex. D), and Patricia Davis of the Harris Corp. (Ex. E). As CPD could not have deployed or activated equipment it did not have, Plaintiff cannot have been injured-in-fact by CPD through the use of the CSS. Thus, Plaintiff lacks standing, and the Court has no jurisdiction to entertain his claims. *Apex Digital*, *supra*, is instructive. In that case, Apex sued Sears over some $8 million in allegedly unpaid purchases. Sears moved to dismiss for lack of standing under Rule 12(b)(1) and submitted documentation showing that Apex had assigned all rights in its accounts receivable to another company. The Seventh Circuit explained that the submission of this evidence meant that "[t]he presumption of correctness that we accord to a complaint's allegations falls away, . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists." 572 F.3d at 444-45 (citations and internal quotations omitted). Because Apex failed to produce any evidence to rebut Sears' showing that it no longer had any rights in the accounts receivable, the Seventh Circuit held that Apex lacked standing and affirmed the district court's dismissal under Rule 12(b)(1). *Id.* at 445-46.

The same result should obtain here. Plaintiff alleges that he was injured because CPD used a CSS to capture information from his cell phone on January 15, 2015. But, as the attached

5

declarations of CPD personnel and of Patricia Davis of the Harris Corporation demonstrate, CPD did not have the device in its possession or control on that date. Just as Apex did not own the accounts whose alleged non-payment purportedly caused it harm, Plaintiff could not have been affected by the deployment of CPD's CSS system because the system was out of the state for an upgrade. Hence, there was no injury-in-fact and standing is lacking. *See also Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 870 (8th Cir. 2013) (assessing, on factual challenge to standing, affidavits relating to whether plaintiff's members' wastewater practices are prohibited by new EPA directive); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 905 F. Supp. 2d 1158, 1167-71 (E.D. Cal. 2012) (deciding Rule 12(b)(1) factual standing challenge based on declarations as to effect of defendants' actions on plaintiffs' water allocations);[3] *Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09-06024 JSW, 2010 WL 2528844 (N.D. Cal. June 18, 2010), aff'd in relevant part, 484 Fed. Appx. 116 (9th Cir. 2012) (dismissing vehicular product liability claim under Rule 12(b)(1) for lack of injury-in-fact based in part on factual demonstration that named plaintiffs' vehicles had received the proffered recall service).

Because Plaintiff was not – indeed, could not have been – injured by CPD's use of a CSS, Plaintiff is no differently situated than any citizen who has objections to some product, policy, or activity, yet has not been affected by that product, policy, or activity in a concrete and particularized way, and thus has merely a "generalized grievance" insufficient to allow him into federal court. *See Lujan*, 504 U.S. at 574-76. Plaintiff lacks standing and his Complaint should be dismissed.

---

[3] The court in *San Luis* also relied on the affidavits to address the analytically distinct causation prong of Article III standing, *i.e.*, whether the plaintiff's injury is fairly traceable to defendant's conduct. 905 F. Supp. 2d at 1172. In the instant case, causation is necessarily lacking because the City could not have caused any injury to Plaintiff because it did not have possession or control over the device in question on the date of Plaintiff's alleged injury?.

6

## II. Plaintiff Fails to State a Claim Under the Fourth Amendment (Count I).

Even if Plaintiff had standing to bring this case, his Complaint fails to state a claim under Rule 12(b)(6). Plaintiff contends that the City violated his Fourth Amendment rights when CPD utilized a CSS device "to search [his] private cell phone[]" without "a warrant or probable cause." Compl. ¶¶ 60, 62. To state a claim for violation of the Fourth Amendment, Plaintiff must establish that a search occurred and the search was unreasonable. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). Plaintiff fails to state a claim because he does not allege specific facts supporting a Fourth Amendment violation. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Count I does not do this. It pleads only a formulaic recitation of the elements of a Fourth Amendment claim supported by nothing more than conclusory statements, which this Court need not accept as true. *See Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (affirming dismissal of plaintiff's claim because it consisted of "merely a formulaic recitation of the cause of action" and thus plaintiff had "failed to ground his legal conclusions in a sufficiently plausible factual basis").

While Plaintiff expounds at length regarding the theoretical capabilities of CSS equipment, the only facts pertinent to the alleged unlawful search of his cell phone are as follows:

> 60. At approximately 8:00pm at the protest, near the 2200 block of West Ogden Avenue, one or more Defendant Cell Site Operators used a cell site simulator to search the private cell phones of Mr. Boyle and nearby protestors, bystanders, and Chicago residents.
>
> 61. The Defendants deployed the cell site simulator in the immediate vicinity of private homes, private offices, juvenile courts, medical facilities, and at least one church, as well as

7

> protesters engaging in protected political speech.
>
> 62. The Defendants did not have a warrant or probable cause to search and seize the private cell phones of Mr. Boyle or any other member of the public at the protest.

Compl. ¶¶ 60-62. These alleged facts do not support a conclusion that a search within the meaning of the Fourth Amendment was conducted.

A search for purposes of the Fourth Amendment occurs when "the government intrudes upon an individual's legitimate expectation of privacy in the object of the search." *United States v. Paxton*, 848 F.3d 803, 807 (7th Cir. 2017). In order to establish a legitimate expectation of privacy a plaintiff must show that, "by his conduct, [he] has 'exhibited an actual (subjective) expectation of privacy,'" and that "the individual's subjective expectation of privacy is 'one that society is prepared to recognize as 'reasonable[.]'"" *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)) (internal citations omitted). Plaintiff's blanket assertion that CPD uses a CSS to collect "personal data" or "personal information" from cell phones is too conclusory and indeterminate to establish a violation of a reasonable expectation of privacy. As *Iqbal* instructs, a complaint that offers only "naked assertions devoid of further factual enhancement" fails to state a plausible claim for relief and must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Here, "personal data" could mean any number of things: a cell phone's location, its IMSI or ESN number,[4] or the actual content of text messages, browsing history or calls. But not all of this information is reasonably regarded as private under the Fourth Amendment. *See United States v. Patrick*, 842 F.3d 540, 543 (7th Cir. 2016) (noting "[o]ne potential question posed by use of a cell-site simulator would be whether it is a 'search' at all"

---
[4] An ESN is a phone's electronic serial number and an IMSI is the international mobile subscriber identification.

given the nature of the information collected); *United States v. Graham*, 824 F.3d 421, 433 (4th Cir. 2016) ("The Supreme Court has thus forged a clear distinction between the contents of communications and the non-content information that enables communications providers to transmit the content."). For instance, a phone's location data when used in public can hardly be regarded as private, since the user's presence at the location is apparent to any passerby. Because Plaintiff has not pleaded facts concerning the type of information allegedly gathered by CPD, he has not pleaded the specific facts necessary to establish that a Fourth Amendment search, in fact, occurred.

### III. Plaintiff Fails to State a First Amendment Claim (Count II).

Plaintiff puts forth a bevy of variants on his First Amendment theme, asserting "interfer[ence] with lawful communications" and invasion of property and privacy, Compl. ¶ 126; "curtailment of [the] right to engage in free speech, assembly, and association," *id*. ¶ 127; and "chilling" of future First Amendment activity, *id*. ¶ 130. Plaintiff also asserts that the putative First Amendment violations were "intentional, willful, and exhibited a conscious disregard or reckless indifference to the rights of Plaintiff and all others similarly situated." *Id*. ¶ 128. Plaintiff's First Amendment claim fails for the same reason as his Fourth Amendment claim: he does not articulate the facts necessary to state a plausible claim. What is more, while Plaintiff alleges malicious intent, he does not allege facts supporting that inflammatory accusation – such as which defendant(s) allegedly had ill will, against whom that animus was directed, and why they would have intentionally targeted First Amendment activity. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 886-87 (7th Cir. 2012) (affirming dismissal of intentional discrimination claims which consisted of boilerplate recitations of improper intent with no facts as insufficient under the "plausibility" standard of *Iqbal*).

9

For starters, Plaintiff does not articulate how the alleged CPD actions regulated or otherwise affected his speech or expression. The same is true with respect to the alleged infringement of "free assembly." No facts are alleged to suggest any such infringement; Plaintiff admits he attended the event in question, and he does not allege any way in which his ability to assemble there with others was limited. Nor does he suggest that he cannot assemble anywhere else or with anybody else in the future. This simply fails to state a claim. *See Strohl v. Vill. of Fox River Grove*, No. 13 C 50352, 2014 WL 2738627 (N.D. Ill. June 17, 2014) (conclusory allegation that government measure violates freedom of association does not meet pleading standard of *Twombly*, in light of the requirement that government interference in association must be "'direct and substantial'") (quoting *Lyng v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am, UAW*, 485 U.S. 360, 360 (1988)).

As to the "chilling effect" claim, the Complaint is just as deficient. It is well established that a subjective assertion of a chilling effect is insufficient; rather, there must be a "concrete and particularized chilling effect" on the plaintiff's protected speech or expressive conduct. *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012) (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Plaintiff's assertion of a chilling effect is merely subjective; his Complaint states no facts to support an objective basis for his allegation. However, even apart from this factual disconnect (raised under Rule 12(b)(1)), the Complaint is devoid of any facts to support a plausible claim of objective "chilling."

Finally, Plaintiff asserts infringement of his "freedom of association." But once again, Plaintiff pleads no facts that even hint as to what expressive activities were hampered by CPD's alleged use of a CSS or how they were so hampered. It follows that he has not pleaded facts sufficient to state a plausible claim that his ability to associate with others in pursuing these

10

expressive activities was in any way thwarted or limited. In sum, Plaintiff's conclusory references to alleged First Amendment violations are devoid of even the most basic facts. Hence, Count II fails to state a claim and should be dismissed.

IV. **Plaintiff Fails to State a Claim under Article I, Section 6 of the Illinois Constitution (Count V).**

Plaintiff's claim of an unlawful search and seizure under Article I, Section 6 of the Illinois Constitution fails for the same reasons as his Fourth Amendment claim; and to the extent Plaintiff alleges "invasions of communications" in violation of the state constitution, Plaintiff likewise fails to state a claim.[5] Article I, Section 6 provides: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. art. I, § 6. The Illinois Supreme Court has held that the search and seizure provision of Article I, Section 6 is co-extensive with the federal Constitution and thus is interpreted analogously under Illinois' limited lockstep doctrine. *People v. Burns*, 2016 IL 118973, ¶ 19, 50 N.E.3d 610, 616-17 ("This court interprets the search and seizure clause of the Illinois Constitution in 'limited lockstep' with its federal counterpart."). Accordingly, the search and seizure portion of Plaintiff's Count V should be dismissed for the same reasons as the federal Fourth Amendment claim. *See supra* Section II.

However, Plaintiff also bases Count V on the protection against "interceptions of communications" under Article I, Section 6. But nowhere in the Complaint does Plaintiff allege

---

[5] Because Plaintiff fails to state any federal claims, this Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). However, should this Court evaluate Plaintiff's state law claims on the merits, *see id.* at 502 & n.7 (affirming retention and subsequent dismissal of supplemental jurisdiction over state claims in the interests of judicial economy), the Court should dismiss these claims as insufficient as a matter of law.

11

that he, in fact, suffered, any "interceptions of communication." While Plaintiff asserts that CPD searched some undefined "personal information" or "personal data" (despite CPD not possessing any CSS equipment during the relevant time period), he does not specify whether such data was limited to data identifying the cell phone and its location or instead included the content of personal communications. Plaintiff merely notes that some cell site simulators have the "capability" to access the content of text messages without going the extra step to allege that CPD's equipment has such capabilities or that any of Plaintiff's communications were in fact intercepted. Count V should therefore be dismissed for failure to state a claim.

## V.     Plaintiff Fails to State a Claim for Invasion of Privacy (Count VI).

Plaintiff likewise fails to allege factual support sufficient to state a claim for invasion of privacy under Illinois law. Illinois divides the tort of invasion of privacy into four categories: (1) an unreasonable intrusion upon the seclusion of another, (2) the appropriation of another's name or likeness, (3) a public disclosure of private facts or (4) publicity which unreasonably places another in a false light before the public. *Huskey v. Natl. Broad. Co., Inc.*, 632 F. Supp. 1282, 1286 (N.D. Ill. 1986). Assuming Plaintiff brings the claim under the only remotely applicable category – "unreasonable intrusion upon the seclusion of another" – none of the four required elements of this category is adequately pleaded. To state a cause of action, Plaintiff must allege: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." *Johnson v. K-mart Corp.*, 723 N.E.2d 1192, 1196 (Ill. App. Ct. 2000).

Moreover, it is essential that a plaintiff plead that the information allegedly obtained was private, for this element "is a predicate for the other three. Without private facts, the other three elements of the tort need not be reached." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017-18

(Ill. App. Ct. 2004). Plaintiff's failure to allege what "personal data" was intruded upon thus entirely undercuts his privacy claim. The allegations that "personal data" or "personal information" was accessed are insufficient, because under Illinois law even a social security number is not sufficiently private to sustain an invasion of privacy claim. *See id.* ("In the absence of an Illinois law defining social security numbers as private information, we cannot say that defendants' use of this number fulfills the privacy element necessary to plead intrusion upon seclusion. Nor are the individual pieces of information – names, address, particulars of cell phone use – facially revealing, compromising or embarrassing."); *see also Troeckler v. Zeiser*, No. 14-cv-40-SMY-PMF, 2015 WL 1042187, at *2-3 (S.D. Ill. Mar. 5, 2015) (collecting cases and holding that installing a GPS device on a vehicle did not violate the Illinois Constitution's right to privacy because plaintiffs failed to plead that the GPS conveyed information that the vehicle was driven into a private secluded location in which plaintiffs would have a reasonable expectation of privacy). Once again, "Illinois' tort of invasion of privacy by intrusion upon seclusion requires the disclosure of a private matter or private fact in addition to an unauthorized intrusion or prying into the plaintiff's seclusion." *Troeckler*, 2015 WL 1042187, at *3. Plaintiff's failure to allege the critical factor – disclosure of a private matter or fact – thus requires dismissal of his privacy claim.

## VI. Because Plaintiff's Claims Against the Individual Defendants Fail, Counts VII and VIII Against the City Should be Dismissed.

Count VII of Plaintiff's Complaint seeks to hold the City liable for "all state law torts" committed by the Individual Defendants "within the scope of their employment," under the theory of respondeat superior. Compl. ¶¶ 152-53. Count VIII seeks to hold the City liable for "any tort judgment for compensatory damages" for which the Individual Defendants may be found liable, under a theory of indemnification. The respondeat superior and indemnification

claims conceivably apply only if the Individual Defendants are found liable for wrongdoing in their individual capacities, and, for the reasons set forth in Sections II-V and VI of the Individual Defendants' Memorandum in Support, the Complaint fails to state any claim against the Individual Defendants. As a result, Counts VII and VIII also fail and should be dismissed.

## CONCLUSION

For the foregoing reasons, the City of Chicago requests that the Court dismiss Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and grant the City such further relief as the Court deems just and appropriate.

Date:  April 24, 2017

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago

By:     /s/  John L. Hendricks

John L. Hendricks
Andrew S. Mine
Margaret Sobota
Tara D. Kennedy
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-6975 / 9028

*Attorneys for Defendant City of Chicago*