IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JERRY BOYLE, on behalf of himself and a class of others similarly situated,<br><br>                  Plaintiff,<br><br>                  v.<br><br>CITY OF CHICAGO, et al.,<br><br>                  Defendants. | Case No. 17-cv-00244<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Garry McCarthy, John Escalante, Eddie Johnson, Nicholas Roti, Anthony Riccio, Jack Costa, and James Washburn (collectively "Individual Defendants") by their counsel, Edward N. Siskel, Corporation Counsel for the City of Chicago, hereby respectfully submit this memorandum of law in support of their motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Class Action Complaint ("Complaint"). In support of their motion, the Individual Defendants state as follows:

**INTRODUCTION**

Plaintiff has sued the City of Chicago and numerous current and former members of the Chicago Police Department ("CPD"), including the Individual Defendants,[1] on behalf of himself and a purported class, claiming that certain technology is used by CPD in violation of the First and Fourth Amendments of the United States Constitution, as well as corollary provisions in the Illinois Constitution, and also raising a variety of state tort claims. Plaintiff's Complaint fails at the outset under Rule 12(b)(1) because on the day that Plaintiff's alleged injury occurred CPD

---

[1] Defendant City of Chicago is filing a separate motion to dismiss addressing claims directed at it, portions of which are being adopted by the Individual Defendants, as set forth below.

was not in possession of the technology at issue. But even if Plaintiff could overcome this fatal pleading defect, the Complaint should be dismissed in its entirety for a failure to state a claim under Rule 12(b)(6), as set forth fully below.

## BACKGROUND

Plaintiff's claims center on technology known as "cell site simulators," which Plaintiff claims have "extraordinary capabilities" and "can" access the content of calls, call log information, text messages, internet browsing history, and location information for cell phones. *See* Compl. ¶¶ 27-33. The Complaint contains a historical synopsis of CPD's purchase of its cell site simulator, including details about disputes that arose in state court Freedom of Information Act ("FOIA") litigation. Plaintiff also spends several pages detailing the City's alleged past surveillance of political groups, dating back to the 1920s, which Plaintiff characterizes as "First Amendment investigations." Compl. ¶ 98. Yet Plaintiff makes no allegation that he was the subject of any such First Amendment investigation. Plaintiff appears to insinuate that because the City allegedly improperly implemented surveillance between 1920 and 1970, it must be improperly preforming surveillance now. However, nothing in Plaintiff's selective historical account of surveillance activities is relevant to Plaintiff's claims in the present action.

The only facts alleged here that are even pertinent to Plaintiff's claims consist of the following allegations: Plaintiff Boyle attended a "political protest" on January 15, 2015, and around 8:00 p.m. that day, his "private cell phone was searched by a CPD cell site simulator," near the 2200 block of West Ogden Avenue, without "a warrant or probable cause." Compl. ¶¶ 6, 11, 56, 60, 62. He also alleges that this supposed use of "cell site simulators on Plaintiff Boyle in January 2015" was "pursuant to CPD's standard practice of spying on political protestors." *Id*. ¶ 103. But there is nothing in the Complaint that explains why Plaintiff believes

his phone was searched by a cell site simulator on that date or what type of information was collected. Further, Plaintiff does not specify whether he believes he was a target of a CPD investigation or merely happened to be present in the area of a targeted search.

Furthermore, Plaintiff makes no specific allegations against any of the Individual Defendants that could link their actions to Plaintiff's purported injuries. Each allegation against the Individual Defendants consists of nothing more than a bare assertion that they oversaw the purchase or use of cell site simulators as part of their supervisory responsibilities. *See* Compl. ¶¶ 13-19, 65. Beyond listing the job descriptions of the Individual Defendants, Plaintiff does nothing more than plead the boilerplate elements of each claim in an entirely conclusory fashion. *See id*. ¶¶ 109-13. In short, Plaintiff does not plead a single specific allegation of direct involvement by any of the Individual Defendants regarding the alleged search on January 15, 2015 (the only date alleged by Plaintiff).

## 12(b)(6) LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, the defendant must be given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are presumed true for purposes of a motion to dismiss, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Virnich*

*v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## ARGUMENT

I.  **Under Rule 12(b)(1) Plaintiff's Complaint Must be Dismissed in Its Entirety Because Plaintiff Lacks Standing.**

For the reasons fully explained in the City's Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint ("City Memo."), incorporated herein by reference, Plaintiff lacks standing for his claims and the Complaint should be dismissed in its entirety under Rule 12(b)(1). *See* City Memo., Section I.

II. **The Individual Defendants are Entitled to Qualified Immunity for Plaintiff's First and Fourth Amendment Claims.**

Government officials, such as the Individual Defendants, are shielded from liability for civil damages when their conduct does not violate clearly established rights. *See Ewell v. Toney*, _ F.3d _, 2017 WL 1315666, at *4 (7th Cir. Apr. 10, 2017). Qualified immunity works to shield police officers "who act in ways they reasonably believe to be lawful." *Id.* (citations and internal quotation marks omitted). Once a qualified immunity defense is raised, the plaintiff carries the burden of defeating it. *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2000). To do so here, Plaintiff must show that (1) Plaintiff has alleged facts that establish a constitutional violation, and (2) case law clearly established that the Individual Defendants' alleged conduct violates the law. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[2] District courts have the discretion to decide which of the two prongs should be addressed first, taking into account the particular circumstances of each case. *See id.* at 236. The Complaint here fails in both respects for Plaintiff's First and Fourth Amendment claims.

To show that case law is "clearly established," Plaintiff must cite a case that "has both

---

[2] Under *Iqbal* and its progeny it is well established that the Court may properly consider these factors on a motion to dismiss under Rule 12(b)(6). *See*, *Iqbal*, 556 U.S. 662. *See also Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).

articulated the right at issue and applied it to a factual circumstance similar to the one at hand." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 620 (7th Cir. 2002) (citation omitted); accord *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Plaintiff bears a heavy burden under this standard. *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994). "[A]nalogous case law" is not enough. *Doyle*, 305 F.3d at 620. Rather, the case law must show that "at the time the defendant[] acted, it was *certain* that [his or her] conduct violated the law." *Id.* (emphasis added). The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) (quoting *al-Kidd*, 563 U.S. at 741). Rather, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (holding the lower court misunderstood the "clearly established" analysis when it "failed to identify a case where an officer acting under similar circumstances as [defendant] was held to have violated the Fourth Amendment").

To be "clearly established" the law should derive from either the Supreme Court or the Seventh Circuit, *see Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). If there is no such precedent, Plaintiff must show that there is a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, Plaintiff must show that "there was such a clear trend in the case law that [the court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Denius*, 209 F.3d at 951 (citation omitted).

Here, there is no case law clearly establishing that the Individual Defendants' alleged use of a cell site simulator violated Plaintiff's rights. The Supreme Court has not addressed the

constitutionality of cell site simulators, and the first court of appeals to even discuss this technology, the Seventh Circuit, reached its decision in November of 2016, nearly two years *after* the wrongdoing alleged by Plaintiff. *See United States v. Patrick*, 842 F.3d 540, 545 (7th Cir. 2016) ("Questions about whether use of a simulator is a search, if so whether a warrant authorizing this method is essential, and whether in a particular situation a simulator is a reasonable means of executing a warrant, have yet to be addressed by any United States court of appeals."). Far from suggesting that use of cell site simulators violated clearly established rights, the Seventh Circuit stated that "[q]uestions about whether use of a simulator is a search, if so whether a warrant authorizing this method is essential, and whether in a particular situation a simulator is a reasonable means of executing a warrant, have yet to be addressed by any United States court of appeals. We think it best to withhold full analysis until these issues control the outcome of a concrete case." *Id.* at 545. *See also In the Matter of the Application of the of Am. for an Order Relating to Tels. Used by Suppressed*, No. 15 M 0021, 2015 WL 6871289, at *1 (N.D. Ill. Nov. 9, 2015) ("Unfortunately, the one place where a person will be unable to find much discussion of cell-site simulators is case law."). While *Patrick* focused on the implications under the Fourth Amendment with respect to the use of cell site simulators, there is likewise no case law from the Seventh Circuit or Supreme Court finding the use of such devices violates the First Amendment.

Thus, it is clear that Plaintiff cannot show that the Individual Defendants' alleged use of a cell site simulator violated clearly established law. On this basis alone, the Individual Defendants are entitled to qualified immunity from liability on Plaintiff's First and Fourth Amendment claims.[3]

---

[3] Because Plaintiff cannot show a clearly established right was violated, the Court need not consider the other prong of qualified immunity, that is, whether the Individual Defendants violated a

### III. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 Against the Individual Defendants in Counts I–IV.

Plaintiff's allegations against the Individual Defendants are insufficient to state a claim for individual or personal liability under 42 U.S.C. § 1983. Because Counts I through IV each depend on § 1983 to state a claim, each of these counts must be dismissed as pleaded against the Individual Defendants. "Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Kelly v. Mun. Courts of Marion Cnty.*, 97 F.3d 902, 909 (7th Cir. 1996). *See also Doyle*, 305 F.3d at 614 ("It is well-established that a plaintiff may only bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation."). The Seventh Circuit has repeatedly held that a "defendant will not be liable for a constitutional violation under § 1983 if the defendant merely exercised supervisory authority over those who violated the plaintiff's rights and otherwise failed to participate in any violation of the plaintiff's rights." *Kelly*, 97 F.3d at 909. "[A]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal citations and quotation marks omitted). In short, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" in order to be held personally liable for the actions of subordinates. *Id.*[4]

---

constitutional right. But even if the Court did consider that question, as detailed in Sections II and III of the City's Memorandum, incorporated herein by reference, the Individual Defendants did not violate Plaintiff's First and Fourth Amendment rights.

[4] As the Seventh Circuit ruled in *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997), supervisors who fail "to detect and prevent subordinates' misconduct are not liable, because negligence is no longer culpable under § 1983." *Id.* at 477. Gross negligence is also not enough to impose individual liability. *Id.*

7

While Plaintiff attempts to allege that the Individual Defendants were personally involved in or condoned the constitutional violations alleged in Counts I-IV, he pleads no specific facts to support those allegations. The Complaint merely lists each Individual Defendant's general job duties as related to cell site simulators,[5] followed by the conclusory statement that each Individual Defendant "is sued in his individual capacity for his direct participation in, supervisory liability for, and failure to intervene to prevent the unlawful use of cell site simulators on Mr. Boyle and all others similarly situated." Compl. ¶¶ 13-19 (with minor variations). The portion of the Complaint labeled "The Defendant Supervisors' Misconduct" does not provide any additional support beyond threadbare allegations consisting of legal conclusions. *See id.* ¶¶ 109-13.

These claims are insufficient to show that the Individual Defendants were "personally responsible for the deprivation of a constitutional right," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff's claims that the Individual Defendants "directly participated in," Compl. ¶ 109, or "oversaw, endorsed, condoned, and acquiesced in the above-mentioned policies, practices, and customs, and refused to take steps to correct them, turning a blind eye," *id.* ¶ 111, without more, do not state a claim under § 1983. These allegations are merely a "formulaic recitation of the elements" of a claim for individual liability under § 1983 and accordingly are not entitled to the

---

[5] *See* Compl. ¶ 13 ("As Superintendent, McCarthy oversaw and approved of CPD's policies, practices, and customs with regard to cell site simulator surveillance and continued, facilitated, and maintained the unlawful use of cell site simulators by his subordinates."); *id.* ¶ 14 (identical language for Defendant Escalante); *id.* ¶ 15 (identical language for Defendant Johnson); *id.* ¶ 16 ("As BOC chief, Defendant Roti was responsible for overseeing the acquisition and usage by CPD of cell site simulator technology and the policies, practices, and customs of the BOC with regard to cell site simulators."); *id.* ¶ 17 (identical language for Defendant Riccio); *id.* ¶ 18 ("As the head of CPD's Tech Lab, Costa is responsible for the uses and practices of CPD in employing various technologies, including cell site simulators."); *id.* ¶ 19 ("Defendant Washburn is involved in both the purchase and use of cell site simulator technology by CPD.").

assumption of truth. *Iqbal*, 556 U.S. at 680-81 (noting that allegations that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'" was a conclusory allegation "not entitled to be assumed true."). Accordingly, Counts I, II, III and IV as pleaded against the Individual Defendants should be dismissed.

### IV. Plaintiff Fails to State a Claim for Failure to Intervene.

Count III of Plaintiff's Complaint seeks to hold the Individual Defendants liable for their failure to intervene to prevent the alleged violations of Plaintiff's constitutional rights. At the outset, because Plaintiff has not sufficiently pleaded that his rights were violated, *see* City Memo., Sections II & III (incorporated herein by reference), this claim necessarily fails. *See Smith v. Daniels*, No. 01 C 4157, 2003 WL 1717635, at *7 (N.D. Ill. Mar. 28, 2003) (no liability for failure to intervene "absent an underlying constitutional violation that the defendants could have prevented"); *Pierce v. Ruiz*, No. 13-CV-6824, 2016 WL 6395440, at *2 (N.D. Ill. Oct. 28, 2016) ("foundational premise of a failure to intervene claim" is that "one Defendant committed a constitutional violation"). But even if Plaintiff's rights were somehow violated, which they were not, the Complaint does not adequately plead a claim against the Individual Defendants for a failure to intervene.

A claim for failure to intervene arises when "any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997) (citations omitted). The duty to intervene attaches only if the defendant "has reason to know that a constitutional violation is being committed." *Smith v. Daniels*, 2003 WL 1717635, at *7 (N.D. Ill. Mar. 28, 2003) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.

1994)). Here, because there is no clearly established law holding that the use of cell site simulators is unlawful, *supra* Section II, there was no reason for the Individual Defendants to suspect any constitutional violations were occurring and they therefore had no duty to intervene. Accordingly, Count III should be dismissed.

**V.      Plaintiff Fails to State a Claim of Conspiracy.**

While Count IV seeks to hold the Individual Defendants liable for conspiring to violate his federal constitutional rights, Plaintiff has not sufficiently pleaded that any of his rights were violated, *see* City Memo., Sections II & III (incorporated herein by reference); accordingly, this claim necessarily fails. "[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). *See also Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013) ("There must be an underlying constitutional injury, or the conspiracy claim fails.").

Further, Plaintiff fails to allege conspiracy beyond making unsupported legal conclusions not entitled to a presumption of truth. "[T]o establish a prima facie case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). "A bare allegation of conspiracy was never enough to survive a motion to dismiss for failure to state a claim." *Drager*, 969 F. Supp. 2d at 984 (noting that even before *Twombly* and *Iqbal*, conspiracy claims were held to a "slightly higher pleading requirement"). *See also Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011) ("[Plaintiff's] assertion of a conspiracy is an unsupported legal conclusion that we are not bound to accept as true."). A plaintiff must allege "the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v.*

*Thacker*, 440 F.3d 439, 442 (7th Cir. 2006). *See also Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

Plaintiff has failed to meet these pleading requirements because the Complaint alleges nothing more than the boilerplate elements of a conspiracy claim. The entirety of Plaintiff's conspiracy claim consists of allegations that the Individual Defendants "reached an agreement among themselves to deprive Plaintiff and the class members of their constitutional rights and to protect one another from liability," and that "each of the co-conspirators was a willful participant in joint activity and committed overt acts including but not limited to the purchase and procurement of cell site simulators, the affirmative decision and agreement not to issue any policies, procedures, guidelines, or training to limit misuse of the technology, the affirmative decision and agreement to use cell site simulators without first obtaining a warrant, and/or the use of the technology in an unconstitutional manner." Compl. ¶¶ 138-39. Plaintiff does not list a single specific act on the part of any of the Individual Defendants, beyond that each is employed in a CPD unit or division that has some connection to a cell site simulator. There are no allegations about the involvement of specific individuals, the communications between them, the purpose of the conspiracy, the alleged time frame, or what overt acts were taken by any of the Individual Defendants.[6] Because Plaintiff has failed to plead anything more than a bare allegation of conspiracy, Count IV should be dismissed.

---

[6] Plaintiff's sparsely pleaded conclusions of law stand in sharp contrast to the allegations courts have deemed sufficient to state a claim for conspiracy. *See, e.g.*, *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1078 (N.D. Ill. 2014) (conspiracy sufficiently pleaded where plaintiff identified specific parties, the purpose of covering up an illegal arrest and excessive force and to destroy favorable evidence, and specific dates when the conspiracy took shape); *Senalan v. Curran*, 78 F. Supp. 3d 905, 914 (N.D. Ill. 2015) (holding that while it was a "close call," plaintiff sufficiently pleaded conspiracy where factual allegations were sufficient to support an inference that the defendants communicated with each other on the day that they allegedly used excessive force against him).

**VI.     Plaintiff's Request for Punitive Damages Against the Individual Defendants Should be Stricken.**

On behalf of himself and the class he purports to represent, Plaintiff seeks punitive damages against the Individual Defendants "in an amount sufficient to deter them from continuing to violate" the rights of Plaintiff and the purported class.  Compl. ¶¶ 30-31.  These demands should be stricken because the Complaint fails to allege the requisite intent by the Individual Defendants that could result in punitive damages.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n.9 (1986) (punitive damages "are available only on a showing of the requisite intent").

Punitive damages are available in a § 1983 action only "when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights." *Smith v. Wade*, 461 U.S. 30, 33 (1983).  Because the primary purpose of punitive damages is to deter conduct, punitive damages are available only when "the defendant knew that the conduct which resulted in the injury to the plaintiff was forbidden."  *Soderbeck v. Burnett Cnty., Wis.*, 752 F.2d 285, 290 (7th Cir. 1985).  Stated differently, punitive damages may only be awarded when "the defendant almost certainly knew that what he was doing was wrongful and subject to punishment."  *Id*. at 291; *see also Wells v. City of Chicago*, 896 F. Supp. 2d 725, 745 (N.D. Ill. 2012) ("for purposes of punitive damages what counts is the particular defendant's state of mind").  The Complaint here wholly fails to allege any Individual Defendant had the requisite "evil motive or intent" to allow for punitive damages.  There is not a single allegation in the Complaint that even hints at the state of mind of any particular Individual Defendant, let alone pleads that each Individual Defendant was motivated by ill intent or took action with reckless indifference to federally protected rights.  Plaintiff's prayer for punitive damages should therefore be stricken.

**VII. Counts I, II, V and VI Against the Individual Defendants Should be Dismissed For the Same Reasons as Argued by the City.**

For the reasons fully explained in the City's Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint, incorporated herein by reference, Plaintiff's claims against the Individual Defendants in Counts I, II, V and VI should be dismissed under Rule 12(b)(6). *See* City Memo., Sections II-V.

## CONCLUSION

For the foregoing reasons, Defendants Garry McCarthy, John Escalante, Eddie Johnson, Nicholas Roti, Anthony Riccio, Jack Costa, and James Washburn request that the Court dismiss Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and grant Defendants such further relief as the Court deems just and appropriate.

Date: April 24, 2017

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago

By: /s/ John L. Hendricks

John L. Hendricks
Andrew S. Mine
Margaret Sobota
Tara D. Kennedy
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-6975 / 9028

*Attorneys for Individual Defendants*